UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
DANNY FELICIANO,

     Plaintiff,

    - against -

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-00789 (PKC)

PAMELA K. CHEN, United States District Judge:

 Plaintiff Danny Feliciano, proceeding *pro se*, brings this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), against Defendant Commissioner ("Commissioner") of the Social Security Administration ("SSA"), seeking judicial review of the SSA's denial of his claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.   (Complaint, "Compl.", Dkt. 1.)  Before the Court is the Commissioner's July 18, 2022 motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  (Dkt. 9.)  The Commissioner asks the Court to affirm the Commissioner's April 13, 2020 denial of Plaintiff's claim.  For the reasons set forth below, the Court denies the Commissioner's motion.  The case is remanded for further proceedings consistent with this Memorandum & Order.

## BACKGROUND

 Because the Commissioner's motion is unopposed, the Court adopts the facts set forth in the Commissioner's motion as if set forth fully herein.  *Jackson v. Fed. Exp.,* 766 F.3d 189, 197 (2d Cir. 2014) (noting that in the case of an unopposed motion, "there is no need for a district court to robotically replicate the defendant-movant's statement of undisputed facts and references to the record or otherwise serve as an assistant to our law clerks") (citing *Miranda v. Bennett,* 322 F.3d

171, 175, 177 (2d Cir. 2003). *See* Dkt. 9-1 at 2–8 (setting forth relevant non-medical and medical evidence). The Court, therefore, only discusses those facts that are relevant to this decision. Though an unopposed motion for judgment on the pleadings "allow[s] the district court to accept the movant's factual assertions as true," *Vt. Teddy Bear Co. v. 1–800 Beargram Co.,* 373 F.3d 241, 246 (2d Cir. 2004), the Court has independently reviewed the record in order to "determine from what it has before it whether the moving party is entitled to [] judgment [on the pleadings] as a matter of law." *McDowell v. Commissioner of Soc. Sec.,* No. 08-CV-1783 (NGG), 2010 WL 5026745, at *1 (E.D.N.Y. Dec. 3, 2010) (quoting *Vt. Teddy Bear Co.,* 373 F.3d at 246) (internal citations and quotation marks omitted).

## I.     Procedural History

On September 4, 2013, Plaintiff filed an application for DIB, alleging that he was disabled beginning on December 19, 2011. (Administrative Transcript, ("Tr."), Dkt. 7, at 82, 173, 501.)[1] Plaintiff alleged disability based on legal blindness in one eye, a degenerative back disorder that caused radiating pain through his leg, depression, and panic attacks. His application was initially denied by the SSA. (Tr. 82.) Plaintiff then filed a request for a hearing before an administrative law judge ("ALJ") on March 12, 2014, and on January 26, 2016, Plaintiff appeared with counsel at a hearing before ALJ Margaret L. Pecoraro. (Tr. 51, 83–84.) ALJ Pecoraro issued a decision on May 18, 2016, finding that Plaintiff was not disabled under the Social Security Act ("the Act") and was able to perform many jobs that existed in significant numbers in the national economy. (Tr. 20–39.) On September 19, 2017, the ALJ's decision became final when the Appeals Council of the SSA's Office of Disability Adjudication and Review ("Appeals Council") denied Plaintiff's

---

[1] All references to "Tr." refer to the consecutively paginated Administrative Transcript (*see* Dkt. 7), and not to the internal pagination of the constituent documents.

request for review.  (Tr. 1.)  Plaintiff then appealed the decision on March 1, 2018, and on September 12, 2018, the Honorable Roslynn R. Mauskopf issued a Stipulation and Order remanding the case "for further administrative proceedings, including, but not limited to: attempting to obtain the complete consultative report of Johari Massey, Ph.D; obtaining expert medical testimony if Dr. Massey's report is unavailable; affording a new hearing, if needed, re-evaluating the severity of plaintiff's mental impairments and his residual functional capacity; and issuing a new decision."  (Tr. 604–05.)  On February 4, 2020, Plaintiff appeared before ALJ Pecoraro for a second administrative hearing, (Tr. 536), and on April 13, 2020, the ALJ again found that there were many jobs Plaintiff could have performed during the relevant period, "such as "hand packager, office cleaner and housekeeper," and denied his application.  (Tr. 520.)  On January 10, 2022, the Appeals Council again denied Plaintiff's request for review.  (Tr. 490.)  Thereafter, Plaintiff timely commenced this action *pro se*.  (Compl., Dkt. 1)

## II.    The ALJ Decisions

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step.  *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012).  First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  If the answer is yes, the claimant is not disabled.  *Id.*  If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment.  *Id.* § 416.920(a)(4)(ii).  An impairment is severe when it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities."  *Id.* § 416.922(a).  If the plaintiff

does not suffer from a severe impairment, then the plaintiff is not disabled.[2]  *Id.* § 416.920(a)(4)(ii).

If the plaintiff does suffer from an impairment or combination of impairments that is severe, then

the ALJ proceeds to the third step and considers whether plaintiff has an impairment that meets or

medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the

Listings").  *Id.* § 404.1520(a)(4)(iii); *see also id.* Pt. 404, Subpt. P, App'x 1.  If the ALJ determines

at step three that the plaintiff has an impairment that meets or equals one of the listed impairments,

then the ALJ will find that the plaintiff is disabled under the Act.  *Id.* § 404.1520(a)(4)(iii).  On

the other hand, if the plaintiff does not have such impairment(s), the ALJ must determine the

plaintiff's residual functional capacity ("RFC") before continuing to steps four and five.  To

determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any

related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff]

can do in a work setting."  *Id.* § 404.1545(a)(1).  The ALJ will then use the RFC finding in step

four to determine if the plaintiff can perform past relevant work.  *Id.* § 404.1520(a)(4)(iv).  If the

answer is yes, the plaintiff is not disabled.  *Id.*  Otherwise, the ALJ will proceed to step five and

determine whether the plaintiff, given their RFC, age, education, and work experience, has the

capacity to perform other substantial gainful work in the national economy.  *Id.* §

404.1520(a)(4)(v).  If the answer is yes, the claimant is not disabled; otherwise, the claimant is

disabled and is entitled to benefits.  *Id.*

---

[2] In cases involving mental health, a mental health impairment is severe when the plaintiff has either one extreme or two marked limitations in four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing themselves.  20 C.F.R. Pt. 404, Subpt. P, App'x 1, Part A2 § 12.04(B).  An "extreme limitation" is defined as the inability to function independently, appropriately, or effectively, and on a sustained basis.  *Id.* A "marked limitation" means that functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.  *Id.*

4

ALJ Pecoraro issued her first unfavorable decision on May 18, 2016.  (Tr. 14.)  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from December 19, 2011, the alleged disability onset date, through December 31, 2011, the date Plaintiff was last insured.  (Tr. 25.)  At step two, the ALJ determined that Plaintiff's only severe impairment was left eye blindness, while his generalized anxiety and panic disorder "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities."  (Tr. 25–26.)  At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of the impairments in the Listings.  (Tr. 27.)  The ALJ then determined that Plaintiff had the RFC to do "a full range of work at all exertion levels but with the following non exertional limitations: the claimant was limited to activities not requiring binocular vision."  (*Id*.)  At step four, the ALJ found that Plaintiff was able to perform his past relevant work of delivering merchandise and serving as a security guard.  (Tr. 37–38.)  And finally, at step five, the ALJ determined that through the date last insured, when considering Plaintiff's age, education, work experience, and RFC, there were "jobs that existed in significant numbers in the national economy that the claimant could have performed."  (Tr. 38.)

ALJ Pecoraro issued her second unfavorable decision on April 13, 2020.  (Tr. 498.)  This decision was similar in substance to the ALJ's 2016 decision, but it narrowed Plaintiff's RFC significantly.  (Tr. 504–21.)  As in 2016, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from the alleged onset date through the date last insured.  (Tr. 504.)  At step two, the ALJ determined that Plaintiff had three severe impairments—"left eye blindness, generalized anxiety disorder (GAD), and panic disorder"—as well as several "nonsevere impairments," including episodic headaches, lumbar disc disease, dyspepsia, and

5

obesity.  (*Id*.)  Still, as in 2016, at step three, the ALJ found that Plaintiff's impairments did not

meet or medically equal the severity of the impairments in the Listings.  (*Id*.)

The ALJ then determined Plaintiff's RFC as follows:

The claimant has the residual functional capacity to perform a full range of work at
all exertional levels but with the following nonexertional limitations: the claimant
was limited to activities not requiring binocular vision; limited to simple routine
and repetitive tasks not at a production rate pace and occasional interaction with
coworkers, supervisors and the public.

(Tr. 506.)  At step four, relying on her RFC findings, the ALJ found that claimant was "unable to

perform any past relevant work" as a truck driver.  (Tr. 519.)  But, relying on the testimony of

vocational expert Yaakov Taitz, the ALJ determined that "[t]hrough the date last insured,

considering the claimant's age, education, work experience, and [RFC], there were jobs that

existed in significant numbers in the national economy that the claimant could have performed,"

such as hand packager, router, office cleaner, and housekeeper.  (Tr. 520–21.)  The ALJ therefore

concluded again that Plaintiff was not disabled during the relevant period.  (Tr. 527.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits may bring an action in federal district court

seeking judicial review of the Commissioner's denial of benefits.  42 U.S.C. § 405(g); 42 U.S.C.

§ 1383(c).  In reviewing a final decision of the Commissioner, the Court's role is "limited to

determining whether the SSA's conclusions were supported by substantial evidence in the record

and were based on a correct legal standard."  *Talavera,* 697 F.3d at 151 (internal quotation marks

omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion."  *Selian v. Astrue,* 708 F.3d

409, 417 (2d Cir. 2013) (*per curiam*) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971))

(internal quotation marks and brackets omitted).  In determining whether the Commissioner's

findings are based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.,* 143 F.3d 115, 118 (2d Cir. 1998). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue,* 729 F.3d 172, 175–76 (2d Cir. 2013) (*per curiam*). Ultimately, the Court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

## DISCUSSION

As discussed below, the Court denies the Commissioner's motion for judgment on the pleadings and remands to the SSA because it finds that, in determining that Plaintiff was not disabled in April 2020, the ALJ did not accurately apply the treating physician rule, improperly relied on a non-examining medical expert, and arrived at an RFC that was not supported by substantial evidence. *See Fontanez v. Colvin,* No. 16-CV-1300 (PKC), 2017 WL 4334127, at *15– 27 (E.D.N.Y. Sept. 28, 2017) (remanding after the court determined that the record had not been fully developed and that the RFC was not supported by substantial evidence). Additionally, the Court finds that the ALJ failed to sufficiently develop the record. Each of these findings is, independently, sufficient to warrant remand.

## I.     The ALJ Did Not Properly Weigh the Treating Physician's Opinions

In finding in April 2020 that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels" with certain non-exertional limitations, the ALJ decided not

to give "controlling weight" to the September 2014,[3] December 2015, and February 2016 opinions of Dr. Walter Yee, Plaintiff's primary care physician.  (Tr. 517–18.)  However, in March 2014, Dr. Yee opined that Plaintiff had the residual functional capacity of less than sedentary work, and could only "sit for a maximum of [two] hours, stand/walk for a maximum of [one] hour in an [eight] hour workday, and lift/carry a maximum of [five] pounds occasionally[.]"  (Tr. 517–18, referencing Tr. 344–51.)  In his December 2015 and February 2016 opinions, Dr. Yee found that Plaintiff was "incapable of performing duties at work during breakthrough periods."  (Tr. 518, citing Tr. 444, 489.)  These opinions differed substantially from the ALJ's conclusion that Plaintiff had an RFC to "perform a full range of work at all exertional levels," though limited to activities "not requiring binocular vision" and that only require "simple routine and repetitive tasks not at a production rate pace and occasional interaction with coworkers, supervisors and the public."  (Tr. 506, 518.)  Dr. Yee also stated on March 13, 2014 that Plaintiff "was diagnosed with generalized anxiety disorder and that his condition was not currently controlled," and opined on September 12, 2014 that "the claimant's symptoms would constantly be severe enough to interfere with his attention and concentration and that he would be incapable of tolerating even a "low stress" environment."  (Tr. 264, 318.)  Dr. Yee also wrote on August 21, 2016 that he did "not believe [Plaintiff] can maintain gainful employment at this time due to the possibility that work will aggravate stress, inability to focus on tasks and possibility that work could trigger a panic attack."  (Tr. 47.)

---

[3] The ALJ refers to Dr. Yee's January 2014 opinion, but there is no January 2014 opinion by Dr. Yee in the record.  The Court presumes, on the basis of the contents of the "January 2014" opinion referenced by the ALJ, that she is instead referring to the March 2014 Multiple Impairment Questionnaire that Dr. Yee completed.  (Tr. 344.)

The ALJ accorded "limited weight" to Dr. Yee's opinions because, according to the ALJ, they were (i) not supported by clinical findings or diagnostic studies; (ii) inconsistent with the overall record, which showed: "normal physical examinations in 2012, no physical findings during the period at issue and no significant treatment," that Plaintiff's "anxiety was noted to be under control and stable on medication during the period at issue," and that Plaintiff's daily activities "confirm no significant physical impairment demonstrated by his ability to walk a mile [and] taking generally over-the-counter medication;" and (iii) provided by a general doctor, not a psychiatrist, who "did not see [Plaintiff] on a frequent basis." (Tr. 518.)  This was error.

Under the "treating physician rule," an ALJ must defer "to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir. 2009).[4]  According to this rule, the treating physician's medical opinion on the nature and severity of the disability is given "controlling weight" so long as it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2).  In general, a treating physician's opinion is not given controlling weight when the opinion is inconsistent with those of other medical experts, but "not all expert opinions rise to the level of evidence that is sufficiently substantial to undermine the opinion of the treating physician." *Burgess,* 537 F.3d at 128.  If an ALJ does not give a treating physician's opinion controlling weight, the ALJ must determine the opinion's proper weight by considering factors that include: "(i) the frequency of examination as well as length, nature, and extent of the treatment relationship; (ii) the evidence in support of the

---

[4] Although "[t]he current version of the [Social Security Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's appeal, as Plaintiff's claim was filed in September 2013, and the current regulations only "apply to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.,* No. 17-CV-290, 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); 20 C.F.R. § 404.1520(c).

treating source's opinion; (iii) the extent to which the opinion is consistent with the record as a whole; (iv) whether the treating source is a specialist; and (v) other relevant factors." *Scognamiglio v. Saul,* 432 F.Supp.3d 239, 247 (E.D.N.Y. 2020).  It is a procedural error if the ALJ does not explicitly apply these factors when assigning weight to the treating physician's opinion.  *Estrella v. Berryhill,* 925 F.3d 90, 96 (2d Cir. 2019).  Still, if the ALJ fails to explicitly apply the *Burgess* factors, and a "sweeping review of the record" assures the Court "that the substance of the treating physician rule was not traversed," the Court will affirm.  *Id.* (quoting *Halloran v. Barnhart,* 362 F.3d 28, 36 (2d Cir. 2004).)

First, the ALJ's assessment of the basis for Dr. Yee's conclusions—that they were "not supported by clinical findings or diagnostic studies, and are inconsistent with the record[,] including claimant's description of his activities set forth in the treating records"—is misplaced. (Tr. 518.)  The Second Circuit has "held that the lack of specific clinical findings in the treating physician's report did not, standing by itself, justify the ALJ's failure to credit the physician's opinion." *Clark v. Comm'r of Soc. Sec.,* 143 F.3d 115, 118 (2d Cir. 1998) (citing *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998).)  *See also Drake v. Saul,* 839 Fed.Appx. 584, 588 (2d Cir. 2020), citing *Mnich v. Colvin,* No. 5:14-CV-740 (DNH) (CFH), 2015 WL 7769236, at *21 (N.D.N.Y. Sept. 8, 2015), *report and recommendation adopted*, 2015 WL 7776924 (N.D.N.Y Dec. 2, 2015) ("Neither the SSA nor the courts in this Circuit have required that an impairment . . . be proven through objective clinical findings.")  To the extent that Dr. Yee's reports are based on Plaintiff's own reports of his symptoms, Dr. Yee validly relied on the plaintiff's subjective complaints of pain and depression, "as a patient's report of complaints, or history, is an essential diagnostic

tool."[5]  *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (internal quotation marks, alterations, and citation omitted); *see also Scognamiglio*, 432 F.3d at 247–48, n.8 (citing *Mahon v. Colvin*, No. 115-CV-398 (FPG), 2016 WL 3681466, at *4 (W.D.N.Y. July 6, 2016) (finding ALJ's "reliance on [a plaintiff's] subjective complaints" was not a valid reason for rejecting the opinion of a consultative physician, and was even less valid a reason for rejecting the opinion of a treating physician)).  This is particularly the case for pain and mental impairments like depression. *See, e.g.*, *Lim v. Colvin*, 243 F.Supp.3d 307, 316 (E.D.N.Y. 2017), quoting *Aubeuf v. Schweiker*, 649 F.2d 107, 111–12 (2d Cir. 1981) ("'[S]ubjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other objective medical evidence,' so long as the pain results from a 'physical or mental impairment as defined by section 223(d)(3) of the Act[.]"); *Santana v. Astrue*, 2013 WL 1232461 (E.D.N.Y. Mar. 26, 2013) ("It is axiomatic that a treating psychiatrist must consider a patient's subjective complaints in order to diagnose a mental disorder. . . . This is especially true for diagnoses of mental disorders because . . . a psychiatrist typically treats the patient's subjective symptoms or complaints about those symptoms.")

---

[5] *See, e.g.,* Tr. at 288 (Sept. 9, 2013 treatment notes) ("Mr. Feliciano presents for a health maintenance exam. He had headaches over several months which usually last for 4-5 days. Motrin IB helps a little. It is usually exacerbated by stress. Lately has been stressed because Grandmother is in ICU and he is getting married in 2 mos. Occasionally [sic] he wakes up in AM with a tight feeling in chest and exacerbated by taking a deep breath. It is never related to exertion. He is being followed for GAD with psychiatry . . . ."); *see also* Tr. at 336 (May 5, 2014 treatment notes) ("Patient with a history of lumbar radiculopathy first documented on MRI 20 years ago. Chronic pain which has flared up about 6 days ago after bending down. It has affected his ability to work and he is in process of applying for disability. He takes Naproxyn pm for pain and pain is starting to improve. . . . Pain is in lower back and radiates to right leg."). The Court assumes that "GAD" references Generalized Anxiety Disorder. *See Generalized Anxiety Disorder (GAD)*, JOHNS HOPKINS MEDICINE, https://www.hopkinsmedicine.org/health/conditions-and-diseases/generalized-anxiety-disorder.

Additionally, the record Dr. Yee relied upon in rendering his opinions is replete with evidence of Plaintiff's mental and physical impairments.  For example, the September 12, 2014 Multiple Impairment Questionnaire included a section where Dr. Yee, prompted to "identify the positive clinical findings that demonstrate and/or support [his] diagnosis," identified "episodic feelings of anxiousness and shortness of breath" that were only minimally responsive to Paroxetine and occasional Lorazepam, as well as headaches and lower back pain that were "episodic and responsive to Naproxyn [sic], Percocet, or Tylenol with Codeine."  (Tr. 344.)  He further stated that he could not completely relieve the pain with medication without unacceptable side effects, and that it would be "necessary or medically recommended for [Plaintiff] not to stand/walk continuously in a work setting."  (Tr. 346–47.)  These clinical findings were the product of, at that point, a treatment relationship of more than four years, over which time Dr. Yee had observed Plaintiff's symptoms, ordered diagnostic tests that included blood work and an MRI, reviewed mental health specialists' treatment notes and diagnostic tests, prescribed medication to address diagnosed physical and mental maladies, and monitored Plaintiff's response thereto.  The same was true of Dr. Yee's December 16, 2015 and February 26, 2016 opinions.  (Tr. at 444, 489 (referencing regular visits since May 2010, specific symptoms of GAD and panic attacks, and Plaintiff's prescription and treatment history over time).)  The ALJ's determination that the years'-long efforts of Plaintiff's treating physician to mitigate Plaintiff's chronic pain and GAD using medication, and the treating physician's resulting opinions as to his condition, warranted only "little weight," was plainly erroneous.

The ALJ was also wrong to describe Dr. Yee's medical opinions as inconsistent with Plaintiff's "description of his activities as set forth in the treating records."  In fact, as previously noted, Dr. Yee's opinions relied heavily on Plaintiff's own description of his symptoms and

12

activities.  Additionally, Dr. Yee's medical opinions that Plaintiff is incapable of working during

his frequent breakthrough panic attacks, and that he experiences chronic pain that flares up such

that Plaintiff can only stand for an hour per day and cannot sit for more than two hours per day, is

consistent with Plaintiff's own reports regarding his symptoms.  *See infra* pp. 16–18.

As evidence of the inconsistency of Dr. Yee's opinions with the record, the ALJ references

"normal" physical exams, "generally well-controlled" symptoms, and "narrative reports [that]

specifically state intermittent episodes."  (Tr. 518.)  The ALJ elaborates in his report:

> Overall, the record indicates the claimant's conditions were generally managed,
> with no indication of more than moderate mental limitations and no significant
> physical limitations.  The claimant's medications were not unusual for either type
> or dosage, and generally appear to have been effective.  In short, while the
> claimant's impairments would reasonably result in some functional limitations, the
> record does not contain support in objective or clinical findings for an inability to
> perform all work for any continuous period of 12 months during the relevant time.
> As reported above, the claimant was not seen for his impairments during the period
> at issue.  Further, the record shows that the claimant was engaged in a reasonably
> broad range of daily living activities.  Significantly, the claimant indicated that he
> stopped working because seasonal work ended. . . . He then also indicated that he
> could not stand for long periods due to herniated discs in his back but that he was
> able to do all daily activities.  However, the claimant indicated that from the time
> he woke up in the morning until he went to bed, he was seeking employment or
> working on his personal computer. . . . The claimant also indicated that he was able
> to take care of daily living chores and daily needs.  The claimant stated he had
> herniated discs, but was able to walk a mile [and] . . . in another question, the
> claimant reported that he was able to clean the bathroom.  Treatment notes
> specifically stated that his back pain was mild and did not interfere with activities
> of daily living.  Further, no abnormal findings were present on examinations.  The
> claimant's longitudinal medical history is not consistent with his allegation of
> disability during the relevant time.  In light of these factors, his assertions cannot
> be accepted as entirely consistent.

(Tr. 517.)  To bolster this point, the ALJ further indicates that Plaintiff's "anxiety and depression

were generally referenced as adequately controlled, and on only one or two occasions, not during

or near the period at issue, the claimant's conditions were noted to be not adequately controlled. It

is noteworthy that when noted to be not adequately controlled in July 2011, no reference was made

to anxiety or depression in August 2011, and it was noted to be specifically controlled in January 2012." (Tr. 518.)

There are numerous issues with the ALJ's contention that Dr. Yee's opinions are inconsistent with Plaintiff's statements and that Plaintiff's statements are inconsistent with one another.   Neither Plaintiff's own reports of acute panic and radiating pain, nor Dr. Yee's conclusions that Plaintiff would be totally incapable of performing work duties during his frequent panic attacks, contradict Plaintiff's self-reported daily functioning.   Plaintiff consistently reported acute distress and pain: "episodic" or "daily" panic attacks that "woke him up in the night" and would cause him to experience "shortness of breath," elevated blood pressure, and to pick and pull at the skin on his fingers.  (Tr. 288, 344, 748.)  Plaintiff's GAD and panic attacks—which are the sole focus of Dr. Yee's 2015 and 2016 opinions that the ALJ afforded "limited weight" to—are, according to Plaintiff, "exacerbated by stress" that Plaintiff is better able to avoid by remaining at home, as he reports he mostly does.   Similarly, Plaintiff's report that he can walk one mile and clean the bathroom does not contradict a finding that he cannot stand and walk for more than a maximum of an hour, or lift and carry five pounds.  Plaintiff even reports that these minor domestic tasks were at times beyond his capacity.  For example, since stopping working in 2011, Plaintiff testified that "sometimes [he] couldn't go shopping with [his wife] because when [he] did, that feeling would come on [him] again, and I would have to wait in the car, sit in the car to calm down." (Tr. 564.)  Plaintiff also reported that cleaning would also trigger debilitating symptoms: "I started getting anxious again, like, you know, looking at myself doing something with [cleaning] the toilet, and it would just trigger me in a way where I would be confused of how am I doing it. Am I doing it good? Am I doing it right?  It has to be this way or it has to be that way?  I would just be confused.  It just bothered me."  Plaintiff reported that this self-critical anxious behavior

14

occurred "every day." (Tr. 564–65.) Finally, it is well established that a claimant "need not be an invalid to be found disabled." *Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998) (quoting *Williams v. Bowen,* 859 F.2d 255, 260 (2d Cir. 1988)). The activities reported by Plaintiff—for example, basic self-grooming, periodically seeing family at holidays or other functions, searching for employment online, from home—should not, without additional evidence of the strenuousness and frequency of these activities, be considered compelling evidence of his ability to work. "When a disabled person gamely chooses to endure pain in order to pursue important goals," such as attending church and helping his wife on occasion to go shopping for their family, "it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working." *Id.* (quoting *Nelson v. Bowen,* 882 F.2d 45, 49 (2d Cir. 1989).)

In addition, the ALJ erred in finding that Plaintiff's testimony was inconsistent with the overall record and thus not credible. In assessing Plaintiff's RFC, the ALJ was also required to account for Plaintiff's "reports of pain and other limitations," after analyzing the credibility of his statements through a "two-step process": (i) considering if his impairments could "reasonably be expected to produce the symptoms" he testified about; and (ii) evaluating the extent to which these symptoms were "consistent" with the rest of the record. *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1529). Here, the ALJ determined that "the overall medical record and the claimant's testimony *are not inconsistent with the above residual functional capacity*" (Tr. 521–23 (emphasis added)), and concluded that after evaluating the record, including "the claimant's testimony, activities of daily living, and course of treatment, the allegations regarding restrictions imposed by the claimant's impairments are not substantiated by objective medical evidence and the claimant's own statements during the relevant period." (*Id.*) If, as is suggested by the ALJ's phrasing, she determined Plaintiff's RFC before determining his

credibility, the ALJ violated the "dictates of the Social Security regulations." *Smollins v. Astrue,* No. 11-CV-424 (JG), 2011 WL 3857123, at *11 (E.D.N.Y. Sept. 1, 2011) (denouncing "acceptance as a foregone conclusion" of RFC in the ALJ's analysis of the plaintiff's credibility); *see also Otero v. Colvin,* No. 12-CV-4757 (JG), 2013 WL 1148769, at *7 (E.D.N.Y. Mar. 19, 2013) ("[I]t makes little sense to decide on a claimant's RFC prior to assessing her credibility. It merely compounds the error to then use that RFC to conclude that a claimant's subjective complaints are unworthy of belief."). The ALJ erred further in applying the two-step test by over-relying on objective medical evidence (and undervaluing subjective reports of symptoms) in assessing Plaintiff's credibility. *Jackson v. Astrue*, No. 09-CV-1290 (FB), 2010 WL 3777732, at *6 (E.D.N.Y. Sept. 21, 2010) (finding that the ALJ misapplied the two-step credibility analysis where the ALJ "inappropriately relied upon the absence of objective medical findings, in being dismissive of [Plaintiff's] testimony about the pain she experienced . . . as well as the symptoms of her depression.")

Additionally, the remaining medical evidence in the record was not substantially inconsistent with Dr. Yee's findings. The ALJ's acknowledgment that "the claimant's medically determinable impairments could reasonably have been expected to cause the alleged symptoms" (Tr. 518) "clearly placed an onus on the ALJ to assess the record regarding plaintiff's pain and its impact on her residual functional capacity." *Villareal v. Colvin*, No. 13-CV-6253 (LGS), 2015 WL 6759503, at *29 (S.D.N.Y. Nov. 5, 2015). The ALJ does delve into the record—but erroneously cherry-picks evidence when she describes Plaintiff's anxiety and depression as "generally adequately controlled" except for "one or two occasions, not during or near the period at issue." (Tr. 518.) *See Jones v. Saul*, No. 19-CV-5542 (LGS) (BCM) 2020 WL 5775525, at *12 (S.D.N.Y. Sept. 11, 2020) (noting that "an ALJ may not "cherry-pick medical opinions, or

selectively cite treating notes or diagnostic imaging that support the ALJ's own view while ignoring opinions and evidence that do not," and remanding the case on grounds that the ALJ improperly cherry-picked medical evidence in order to assign the treating physician's opinion little weight).   Over more than a dozen appointments with Dr. Yee between February 2011 and December 2016, Plaintiff's anxiety and depression were only described as "well controlled" or improving on four occasions.   (Tr. 280, 287, 289, 395.)   Even when Dr. Yee documented improvement in response to treatment, Plaintiff exhibited symptoms consistent with Dr. Yee's opinion that he was incapable of working.   (*See* the August 5, 2011 treatment notes: "Patient has been compliant with his Paxil and has not had any recent panic attacks.   He is starting a new job and has no issues in his family life.   His chief complaint is persistent headaches which are mostly in the back of his head and recently over the last few days he is feeling disoriented and wobbly on his feet.")   (Tr. 283.)   Meanwhile, at nearly every other visit with Dr. Yee, Plaintiff's GAD was described as "inadequately controlled," "failing to change as expected" in response to increasing medication dosages, or otherwise exacerbated, as expressed in debilitating panic attacks that were occurring multiple times a week or even daily.   (Tr. 282, 292, 294, 338, 747, 748, 751, 752–53, 755, 756, 758.)   Plaintiff also consistently reported his back and hip pain as "chronic," "radiating," or "flaring up," to both Dr. Yee and other physicians with whom Plaintiff consulted throughout this period.   (Tr. 289, 306, 340.)   The ALJ's failure to consider this relevant evidence was error.

Furthermore, even if the record of Plaintiff's GAD was inconsistent, when it comes to the "cycles of improvement and debilitating symptoms [of mental illness] . . . it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."   *Estrella*, 925 F.3d at 97 (citing *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) and *Bauer v. Astrue*, 532 F.3d 606, 609

(7th Cir. 2008) ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days. . . . Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job.").  Since, as in *Estrella*, the ALJ did not attempt to "reconcile" or "grapple with" the ebb and flow of Plaintiff's GAD as reflected in Dr. Yee's treatment notes, the ALJ erred.  *Estrella,* 925 F.3d at 97.

While generally "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with . . . the opinions of other medical experts," Dr. Yee's opinions were also corroborated by other medical professionals. *Halloran*, 362 F.3d at 32.  The ALJ alludes to the opinions rendered by various other medical professionals who each examined Plaintiff once, only to discount them as "not relevant or material to the period at issue"—but takes care to highlight that one opinion, from Dr. Joyce Graber, M.D., finding that "claimant's condition was not significant[,] is consistent with treatment notes around the time of the relevant period." (Tr. 518–19.)  Leaving aside that Dr. Graber's opinion was based on a single consultative assessment and the Second Circuit has "frequently cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination" (*Colgan v. Kijakazi*, 22 F.4th 353, 363 (2d Cir. 2022), citing *Estrella*, 925 F.3d at 98), other opinions dismissed by the ALJ as "not relevant or material" do in fact corroborate Dr. Yee's assessment of Plaintiff's conditions.  Notably, the only doctors Plaintiff saw more than once— psychiatrist Dr. Bartha, whom Plaintiff saw seven times between January and September 2013, and psychologists from Comprehensive Counseling, whom Plaintiff saw three times in March and April 2015 and again in December 2017—do not in any way contradict (and in many ways seem to corroborate) Dr. Yee's conclusions that Plaintiff's "symptoms would constantly be severe

enough to interfere with his attention and concentration and that he would be incapable of tolerating even a 'low stress' environment." (Tr. 318.)    For example, Dr. Bartha wrote in treatment notes from various sessions that Plaintiff reported "not being able to keep a job for long," that Plaintiff "feels devastated due to lack of work," and that "[i]t seems that patient can't manage stress well, or difficulties more than one at a time." (Tr. at 311, 315–16.)  Dr. Bartha increased Plaintiff's Paxil dose twice, from 20 milligrams to 30 and then 40 milligrams, over the brief period that he treated Plaintiff.  The Comprehensive Counseling psychologists diagnosed Plaintiff as "experiencing depression, anxiety and panic, as well as explosive anger" and "extreme low-esteem," and noted that Plaintiff "may have undiagnosed ADHD." (Tr. at 424.)  And Dr. Ruby Phillips, Ph.D., whose opinion as a consultative examiner should have been given weight on par with that granted Dr. Graber, found in her August 18, 2015 psychiatric evaluation that "[r]esults of the examination appear to be consistent with psychiatric problems, and this may significantly interfere with the claimant's ability to function on a daily basis."[6] (Tr. 398.)

Finally, the ALJ erred by discounting Dr. Yee's opinions as the product of infrequent and non-specialist examinations.  A treating physician is defined as the claimant's "own physician, psychologist, or other acceptable medical source" who has provided him or her "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." *Capers v. Comm'r of Soc. Sec.*, No. 18-CV-4579 (KAM), 2020 WL 4260996, at *7

---

[6] Dr. Phillips also documented Plaintiff's self-reported symptoms that were consistent with the symptoms documented by Dr. Yee, including, among other reports, that panic attacks occurred "three times a day and [were] triggered by being in crowds or sometimes at night," and that Plaintiff "dresses, bathes, and grooms himself" and "does some general cleaning" but that it is "difficult due to back pain" and "physical limitations." (Tr. 396–97.)  Dr. Phillips found that Plaintiff was moderately limited in his abilities to "maintain attention and concentration," "learn new tasks," "perform complex tasks independently," "make appropriate decisions," "relate adequately with others," and "appropriately deal with stress." (Tr. 398.)

(E.D.N.Y. Jul. 24, 2020) (quoting 20 C.F.R. § 404.1502).  Here, at the time of his 2022 ALJ hearing, Plaintiff had been treated by Dr. Yee, a general practitioner, at least 27 times over the course of more than ten years, for his chronic back pain, headaches, anxiety, and other medical concerns as they arose.  (Tr. 274–99, 320–53, 489, 732–59.)  The administrative record contains Dr. Yee's treatment records from May 17, 2010 through the end of 2020.  Dr. Yee was the only medical professional Plaintiff regularly saw in the year before and ever since the period at issue. Even so, the ALJ did not consider or credit the longitudinal nature of Dr. Yee's treatment of Plaintiff.  *See, e.g. Sarchese v. Barnhart*, No. 01-CV-2172 (JG), 2002 WL 1732802, at *5 (E.D.N.Y. July 19, 2002) (remanding a case in part because the "length of the relationship was mentioned only in passing in the ALJ's opinion."); *Campbell v. Comm. of Soc. Sec.*, No. 19-CV-4516 (JLC), 2020 WL 4581776, at *21 (S.D.N.Y. Aug. 10, 2020) (remanding a case partly because the ALJ "failed to explicitly consider the length of treatment" of three years by the claimant's treating physician).  The ALJ further discounts Dr. Yee's opinion because he is "a general medical doctor, not a psychiatrist," "is not a mental health specialist," and did not see Plaintiff "for his impairments during the period at issue."  (Tr. 510, 512, 517.)  Although no such inferences are explicitly drawn in the ALJ's opinion, it bears repeating that negative inferences should not be drawn from a failure to pursue regular treatment, especially "in cases involving psychological issues. . . ." *Cooper v. Saul*, 444 F. Supp. 3d 565, 580–81 (S.D.N.Y. 2020).  That rule is particularly applicable where, as the ALJ acknowledged to be the case here, (Tr. 517), the claimant was financially incapable of pursuing specialist treatment, and instead had to rely almost exclusively on their general practitioner.  *See Shaw v. Chater*, 221 F.3d 126, 133 (2d Cir. 2000) (holding that "[i]t would fly in the face of the plain purposes of the Social Security Act to deny claimant benefits because he is too poor to obtain additional treatment. . . .")

20

In sum, the Court concludes that the ALJ did not accord proper weight to Plaintiff's treating physicians' opinions, in violation of the treating physician rule.   In failing to consider the longitudinal nature of Dr. Yee's treatment of Plaintiff, in discounting Dr. Yee's opinions because they were based on Plaintiff's subjective complaints, and in describing Dr. Yee's opinions as inconsistent with the record and with Plaintiff's self-reported functioning, the ALJ erred.   Dr. Yee's opinions should have been given greater weight.

## II.    The ALJ Erred in According Dr. Passo's Testimony "Significant Weight"

The ALJ accords the opinion of only one doctor, medical expert Dr. John Passo, "significant weight," on grounds that Dr. Passo's 2016 hearing testimony "is well supported by the treatment record with specific citations to the record, and consistent with the record when viewed as a whole."  (Tr. 519.)  In doing so, the ALJ erred.

Dr. Passo, who was not a mental health specialist, neither examined nor treated Plaintiff and instead relied entirely upon the administrative record to determine that Plaintiff's "only severe impairment was left eye blindness."  (*Id.*)  "The medical opinion of a non-examining medical expert does not constitute substantial evidence and may not be accorded significant weight." *Roman v. Astrue*, No. 10-CV-3085 (SLT), 2012 WL 4566128, at *16 (E.D.N.Y. Sept. 28, 2012). *See also Pratts v. Chater,* 94 F.3d 34, 38 (2d Cir. 1996) (finding the testimony of a medical expert who "relied exclusively on the material in [the] record to form his opinion" to offer "no basis" for finding "substantial evidence necessary to uphold the ALJ's decision") (citing *Vargas v. Sullivan,* 898 F.2d 293, 295–96 (2d Cir. 1990) (stating that "a doctor's assessment of other doctor's findings merits little weight in a disability determination"), *Hidalgo v. Bowen,* 822 F.2d 294, 298 (2d Cir. 1987).)  "Even where a non-examining opinion is properly afforded some weight, it, alone, cannot

21

be considered substantial evidence." *Avila v. Comm'r of Soc. Sec. Admin.*, No. 20-CV-1360 (ER) (DF), 2021 WL 3774317, at *20 (S.D.N.Y. Aug. 9, 2021).

Here, Dr. Passo's opinion, or lack thereof, was entirely reliant on the record and should not have been accorded substantial weight.  Dr. Passo stated repeatedly that, because there was only subjective testimony in the medical record, he could not render an opinion as to Plaintiff's psychiatric impairment.  (Tr. 68–69.) ("There is—there is nothing objective whatsoever" on which to base [my] assessment of Plaintiff's condition[.]" "The only thing I have is the subjective testimony.  I have no objective psychiatrist evaluation to go on, so I can't render an opinion even if I wanted to.")  The ALJ's decision to accord Dr. Passo's evidence "significant weight" in denying Plaintiff's claim—when Dr. Passo, a non-specialist who did not examine Plaintiff  and stated he could not make a determination as to the severity of Plaintiff's mental health impairment—was clearly error.  Even if, contrary to the aforementioned precedent counseling against according significant weight to non-examining expert opinion, the ALJ does find Dr. Passo's testimony particularly credible, Dr. Passo expressly does not make any finding as to the existence of Plaintiff's mental impairment or ability to work.

Further, while according only "limited weight" to treating physician Dr. Yee's opinion because that opinion was unsupported by or inconsistent with the record, the ALJ accords "significant weight" to non-examining medical expert Dr. Passo's opinion, despite Dr. Passo expressly declining to opine about any mental impairments because of the subjective nature of the record evidence.  Ironically, the ALJ strongly endorses Dr. Passo's opinion because of his finding that there is no "objective" evidence in the record to establish any mental impairment.  The ALJ accords no other experts' or consultative examiners' opinions regarding Plaintiff's mental impairments "significant weight" because of the purported incompatibility of these opinions with

the record evidence. Ultimately, the ALJ's assessment of Plaintiff's claim boils down to her own judgment of the medical evidence, even as she finds that evidence to be inadequate and inconsistent. To the extent that the ALJ steps into the void she identifies and independently overrides Dr. Yee's determination by reading the same records differently and substituting her own judgment, this was error. *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("The ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.").

## III.   The ALJ Failed to Sufficiently Develop the Record

Although a "claimant has the general burden of proving that he or she has a disability within the meaning of the Act, . . . 'because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record.'" *Burgess*, 537 F.3d at 128 (alteration omitted) (first citing *Draegert*, 311 F.3d 468, then quoting *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999).) By concluding there was no medical evidence that supported the treating physician Dr. Yee's medical opinion, without first seeking additional information from Dr. Yee, the ALJ erred. An absence of clinical findings does "not justify the failure to assign at least some weight" to Dr. Yee's opinion because it is "the ALJ's duty to seek additional information from" the plaintiff's treating physican. *Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir 1998). *See also Hartnett v. Apfel,* 21 F.Supp.2d 217, 221 (E.D.N.Y.1998) ("[I]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly.") This affirmative duty to develop the record exists "even when the claimant is represented by counsel." *Perez v. Charter,* 77 F.3d 41, 47 (2d Cir 1996). Here, the ALJ rejects Dr. Yee's opinion as not supported by medical evidence and inconsistent with the record—but

there is no evidence in the record to suggest that the ALJ fulfilled her duty to ask Dr. Yee about the discrepancies she perceived between his medical opinions and his treatment notes, or any attempt to further develop the record with medical evidence that would either confirm or disprove his opinion.  *See Yu v. Astrue*, 963 F.Supp.2d 201, 216 (E.D.N.Y. 2013) ("Even if the ALJ . . . meant to indicate that [the treating physician's] opinions required more *objective* evidence, the ALJ should have attempted to acquire such evidence by developing the record.)  *See also Schaal*, 134 F.3d 496 at 505 ("[E]ven if the clinical findings [in support of the treating physician's opinion] were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte*.")  *Correale-Englehart v. Astrue*, 687 F.Supp.2d 396, 428 (S.D.N.Y 2010) ("if a physician's report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician, as needed, to fill any clear gaps before rejecting the doctor's opinion.").

## CONCLUSION

For the foregoing reasons, this Court denies the Commissioner's motion for judgment on the pleadings.  The Commissioner's decision is remanded for further proceedings consistent with this Memorandum & Order.  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED:

*/s/ Pamela K. Chen*
PAMELA K. CHEN
United States District Judge

Dated: March 17, 2023
      Brooklyn, New York